UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMIEN WASHINGTON,
CDCR #P-31014,

Plaintiff,

vs.

RAFAEL ACEVEDO, Warden, et al.,

Defendants.

Case No.: 26-CV-3733 JLS (BJW)

**ORDER:**

**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS,**

**2) DENYING MOTION TO APPOINT COUNSEL, AND**

**3) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM**

(ECF Nos. 1, 2, 3)

Presently before the Court are pro se Plaintiff Jamien Washington's Complaint ("Compl.," ECF No. 1), Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Appl.," ECF No. 2), and Motion for Leave to Electronically File Documents ("Mot.," ECF No. 3). For the reasons that follow, the Court **GRANTS** the Application to Proceed Without Prepaying Fees or Costs (ECF No. 2), **DENIES** the Motion to Appoint Counsel (3), and **DIMISSES** the Complaint (ECF No. 1).

/ / /

## BACKGROUND

Plaintiff alleges that on June 10, 2025, he appeared at his annual classification hearing at the Richard J. Donovan Correctional Facility in San Diego, California, where chair of the committee, Defendant C-facility Captain Alexander, allegedly conspired with other committee members to terminate his single cell status. Compl. at 15–16. Plaintiff filed multiple complaints and inmate grievances protesting that decision. He claims that, as a result, he "has been suffering retaliation and reprisals from C-facility correctional officers in an overall conspiracy to silence, chill or intimidate Plaintiff from engaging in protected conduct." *Id.* at 16.

### I. First Incident

On the morning of September 13, 2025, Plaintiff was transported from his cell to the Triage and Treatment Area due to suicidal ideations. *Id.* at 5. He was quickly cleared to return to the yard and was escorted there by Defendant Correctional Officer Garcia, where they met Defendant Correctional Sergeant Heraldez at the gate to C-facility. *Id.* Plaintiff told Heraldez he was still suicidal and "had safety concerns due to him and his staff 'harassing' Plaintiff and 'retaliating' against Plaintiff for engaging in protected conduct." *Id.* at 5–6. Heraldez told Plaintiff: "'I don't care you are not going anywhere,'" and "in an unprovoked fit of rage . . . lunged at Plaintiff and forcefully grabbed Plaintiff by his left arm in an overly aggressive manner causing an unbearable burning sensation to Plaintiff's left arm in which Plaintiff just dropped to the ground in a sitting position." *Id.* at 6. Plaintiff claims Heraldez had no reason to assault him because he was in handcuffs and waist chains, and that Garcia should have intervened to prevent the assault. *Id.* at 6–7. He alleges Heraldez said he was going to write him up with Rule Violation Reports ("RVR") "so many times that Plaintiff's custody level would end up being level-4," and that Heraldez "made good on" that "retaliatory statement." *Id.* at 6. He claims Garcia and Heraldez "denied Plaintiff medical care following the assault." *Id.* Plaintiff had filed a grievance against Heraldez on August 3, 2025, for staff misconduct, which was granted, and asserts that the timing suggests the assault was in retaliation for that grievance. *Id.*

## II. Second Incident

Plaintiff alleges that on September 16, 2025, as he returned to his cell from the shower, four or five correctional officers ordered him to submit to restraints, which he did. *Id.* at 7–8. He asked to be allowed to retrieve his shoes, mobility vest, and cane from his cell, which he needed because he is disabled. *Id.* at 8. "Plaintiff stated to the officers that he would come with them willingly and then the next thing you know [Defendant Correctional Officer Gonzalez] approached Plaintiff in a unprovoked manner, and in a hostile, malicious and sadistic manner [Gonzalez] grabbed Plaintiff's left wrist and put Plaintiff's whole left arm behind his back, and then yanked Plaintiff's left arm in a upward and malicious and sadistic manner causing injury to Plaintiff's left shoulder." *Id.* Although there was no "struggle" or "take downs," Gonzalez repeatedly yelled "stop resisting" while the other officers just watched. *Id.* at 8–9. Plaintiff was taken to the gym where he was examined by a licensed vocational nurse but claims he was "denied medical treatment" for his shoulder because Defendant Correctional Sergeant Mercado "was rushing to send" him to the Restricted Housing Unit ("RHU"). *Id.* at 9.

## III. Third Incident

On November 26, 2025, Plaintiff was released from the RHU and escorted in handcuffs to C-facility by Defendant Correctional Officer Molla. *Id.* at 10. He told Molla that he had safety concerns when, in a "malicious and sadistic" manner, Molla forcefully yanked Plaintiff's right arm, trying to put Plaintiff in a different cell against Plaintiff's will. *Id.* "Due to the yanking, tugging and pulling by Molla," Plaintiff fell on his back, causing injuries to Plaintiff. *Id.* Plaintiff was placed in a holding cage in the dayroom where he was "not provided with any medical care" in deliberate indifference to his medical needs. *Id.* at 10–11. Earlier that day, at a classification hearing before a committee chaired by Defendant Warden Acevedo, Plaintiff informed the committee, as he had through inmate grievances, that he feared for his safety in C-facility due to "continual harassment and retaliation" by C-facility officers. *Id.* at 15. The committee disregarded his concerns and sent him back to C-facility where the assault by Molla occurred about ten minutes after

arriving. *Id.* This resulted in him being given a "retaliatory" RVR for refusing a housing assignment. *Id.*

**IV. Fourth Incident**

On February 17, 2026, an altercation between two inmates in the food hall forced everyone to the floor, during which Plaintiff managed to place some food in a bowl. *Id.* at 11. Plaintiff was leaving the food hall with the bowl when Gonzalez said: "'Washington your bowl' or something to this effect and he pointed at the bowl." *Id.* Plaintiff continued to walk out of the food hall with his bowl and Defendant Correctional Officer Rendo jumped in front of the door and blocked him from leaving. *Id.* at 12. Plaintiff turned around and asked Gonzalez, "What is all this shit about?" *Id.* "Next thing you know in a vicious, malicious[,] sadistic attack," Gonzalez, Mercado, and Rendo, along with Defendants Correctional Officers Martinez, Pizarro, Vallejos, and Cuevas, "assaulted Plaintiff, and or contributed to the assault in some way, by grabbing Plaintiff's left arm and all at once they slammed Plaintiff to the ground and jumped on Plaintiff's back causing injury to Plaintiff's lower back." *Id.* While he was on the ground and not resisting, "they bent Plaintiff's arm in the wrong direction causing injury to Plaintiff's left shoulder." *Id.* Plaintiff filed multiple complaints and grievances against C-facility officers and states that the timing of this assault suggests it was in retaliation for those grievances. *Id.* at 12–13. Gonzalez searched Plaintiff while he was on his stomach in handcuffs and grabbed his penis and testicles multiple times in a painful and hostile manner. *Id.* at 14. Plaintiff states that he is a mental health inmate and the assaults caused him emotional distress, fright, horror, grief, anguish, nervousness, anxiety, worry, shock, and humiliation. *Id.*

Plaintiff claims his Eighth Amendment right to be free from cruel and unusual punishment was violated by Acevedo and Alexander by their failure to supervise the other Defendants, by Heraldez, Mercado, Gonzalez, Garcia, Molla, Rendo, Martinez, Pizarro, Vallejos, and Cuevas in assaulting or failing to protect him, and by Acevedo by his failure to train his staff in the use of force. *Id.* at 16–23.

/ / /

## LEGAL STANDARD

### I. Motion to Proceed IFP

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *see also Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1), (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

### II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b)

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (citing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (citing 28 U.S.C. § 1915A(b)).

/ / /

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening also incorporates the 12(b)(6) standard). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**III. Motion to Appoint Counsel**

There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Such exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

## DISCUSSION

**I. Motion to Proceed IFP**

In support of his IFP application, Plaintiff has submitted a copy of his inmate trust account statement attested to by a trust account official. ECF No. 4 at 4. The document

shows he had an average monthly balance of $111.56 and average monthly deposits of $16.96, with an available balance of $36.50. *Id.* The Court **GRANTS** Plaintiff's motion to proceed IFP and assesses an initial partial filing fee of $22.31. However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (holding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Under 28 U.S.C. § 1915(b)(2), the agency having custody of Plaintiff will forward payments to the Clerk of the Court pursuant to the installment provisions of 28 U.S.C. § 1915(b)(1)–(2) until the $350 statutory fee is paid in full.

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b)

### *A. Eighth Amendment Claims*

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind." That is, "one of 'deliberate indifference' to" his constitutional rights. *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832–33). A prison official must know "that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle*, 429 U.S. at 104). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

*1. First Incident*

Plaintiff alleges that on September 13, 2025, at the gate to C-facility, Heraldez "lunged at Plaintiff and forcefully grabbed Plaintiff by his left arm in an overly aggressive manner causing an unbearable burning sensation to Plaintiff's left arm in which Plaintiff just dropped to the ground in a sitting position." Compl. at 5–6. Plaintiff claims that because Garcia was escorting him in handcuffs and waist chains, Heraldez had no reason to assault him, that Garcia should have intervened to prevent the assault, and that both Defendants "denied Plaintiff medical care following the assault." *Id*. at 6–7.

The allegations that Heraldez grabbed Plaintiff's arm and caused a burning sensation are insufficient to plausibly allege Heraldez used more than de minimis force, that he used it maliciously or sadistically rather than in a good faith effort to restrain him, or that it was the sort of force "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. In addition, Plaintiff does not identify any injury suffered as a result of this alleged assault. Although a serious injury is not required to establish an Eighth Amendment violation, the extent of an injury is a factor that may determine "whether the use of force could plausibly have been thought necessary" in the situation, "or instead evinced such wantonness with

respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Not every malevolent touch by a prison guard gives rise to a federal cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (quoting *Hudson*, 503 U.S. at 9)).

For those same reasons, Plaintiff does not state a failure to protect claim. He does not plausibly allege Garcia was aware of facts from which he could draw an inference that Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The conclusory allegation that Heraldez and Garcia "denied Plaintiff medical care" fails to state an Eighth Amendment denial of medical care claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim.).

*2. Second Incident*

Plaintiff alleges that on September 16, 2025, after cooperating with a request to be placed in restraints and asking to be allowed to retrieve his shoes, mobility vest, and cane from his cell, Defendant Gonzalez "grabbed Plaintiff's left wrist and put Plaintiff's whole left arm behind his back, and then yanked Plaintiff's left arm in an upward and malicious and sadistic manner causing injury to Plaintiff's left shoulder." Compl. at 7–8. Even though he was not resisting, Gonzalez kept yelling "stop resisting" while the other officers just watched. *Id*. at 8–9. Plaintiff was taken to the gym where he was examined by medical staff but "denied medical treatment" for his shoulder because Officer Mercado "was rushing to send Plaintiff to the [RHU]." *Id*. at 9.

Plaintiff has not plausibly alleged that the force used was more than de minimis. Nor does he describe the injury to his shoulder or its severity so as to plausibly allege the force used was more than de minimis. *See Wilkins*, 559 U.S. 34, 38 (2010). Instead of providing details surrounding the alleged use of force, Plaintiff conclusorily claims that the force was

malicious. *See, e.g.*, Compl. at 7–8. Absent more facts, Plaintiff does not adequately allege that force was applied sadistically rather than in a good faith effort to restrain him, or that it was the sort of force "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106.

The allegation that medical staff "denied medical treatment" for his shoulder because Mercado "was rushing to send Plaintiff to the [RHU]," is vague and conclusory as to the injury suffered, its severity, and what treatment he required but was denied. Thus, it too fails to state an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678 (holding that conclusory statements do not suffice to plausibly allege a § 1983 claim).

*3. Third Incident*

On November 26, 2025, Plaintiff was released from the RHU and escorted in handcuffs to C-facility by Officer Molla who "yanked Plaintiff's right arm in a forceful manner to try to put Plaintiff in cell-117 against Plaintiff's will." Compl. at 10. "Due to the yanking, tugging and pulling" by Molla, Plaintiff fell to the ground, injuring his lower back. *Id.* at 10–11. He was then placed in a holding cage in the dayroom and denied medical care for his injury. *Id.*

These allegations fail to state a claim because they do not describe the injury to his back or its severity so as to plausibly allege the force used was more than de minimis. And the allegations do not describe the circumstances surrounding the use of force to plausibly allege it was applied maliciously or sadistically rather than in a good faith effort to restore order. *Whitley*, 475 U.S. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106; *Wilkins*, 559 U.S. at 38. The allegation of denial of medical care is also vague as to the injury suffered, its severity, and what treatment he required but was denied. *Iqbal*, 556 U.S. at 678.

*4. Fourth Incident*

On February 17, 2026, after an altercation in the food hall, Plaintiff was leaving with a bowl of food when Gonzalez said: "'Washington your bowl' or something to this effect and he pointed at the bowl." Compl. at 11. When Plaintiff continued to exit the chow hall

with his bowl, Rendo blocked him from leaving and Plaintiff responded by asking Gonzalez, "What is all this shit about?" *Id*. at 12. "Next thing you know in a vicious, malicious sadistic attack," Gonzalez, Mercado, Rendo, Martinez, Pizarro, Vallejos, and Cuevas, "assaulted Plaintiff, and or contributed to the assault in some way, by grabbing Plaintiff's left arm and all at once they slammed Plaintiff to the ground and jumped on Plaintiff's back causing injury to Plaintiff's lower back." *Id*. While he was on the ground and not resisting, "they bent Plaintiff's arm in the wrong direction causing injury to Plaintiff's left shoulder." *Id*. As he was on his stomach in handcuffs, "Gonzalez started to search Plaintiff and grabbed Plaintiff's 'penis' and 'testicles' multiple times in a hostile manner causing Plaintiff a lot of pain and discomfort." *Id*. at 14.

Plaintiff once again fails to identify the type or severity of the injury to his back or shoulder, or whether he took any actions after addressing Gonzalez which may have led the officers to believe the use of force was necessary. Thus, he has not plausibly alleged that the amount of force used was more than de minimis, that it was used maliciously or sadistically rather than in a good faith effort to restrain him, or that it was the sort of force "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106; *Wilkins*, 559 U.S. at 38. Plaintiff has not stated an Eighth Amendment failure to protect claim regarding this incident because the Complaint lacks factual allegations describing his actions and the actions of the individual Defendants. Therefore, Plaintiff fails to plausibly allege any Defendant was aware of facts from which they could draw an inference that Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

*5. Supervisor Liability*

Plaintiff seeks to hold Warden Acevedo and Captain Alexander liable for the failure to supervise and train the other Defendants. Compl. at 16–19, 21–23. "[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676–77 (rejecting argument that

"a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution"). "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quotation marks omitted). Because Plaintiff has not plausibly alleged an Eighth Amendment violation, he has not plausibly alleged Acevedo or Alexander participated in or directed it or knew of and failed to prevent a violation. *Id*.

Plaintiff's Eighth Amendment claims are dismissed for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

***B. First Amendment Retaliation Claims***

Although the Complaint only purports to bring Eighth Amendment claims, Plaintiff indicates that he suspects the Defendants' actions were taken in retaliation for his complaints about harassment by C-facility officers. He claims he "has been suffering retaliation and reprisals from C-facility correctional officers in an overall conspiracy to silence, chill or intimidate Plaintiff from engaging in protected conduct," as a result of his complaints about the revocation of his single cell status. Compl. at 16. He alleges that on the same day he informed a classification committee of "continual harassment and retaliation" by C-facility officers, he was sent back to C-facility where the assault by Molla occurred about ten minutes later and resulted in "a retaliatory RVR for refusing housing." *Id*. at 15. He states that he filed multiple complaints and grievances against C-facility officers and believes the timing of the assaults suggests they were in retaliation for those grievances. *Id*. at 12–13. He also alleges Heraldez said he was going to write Plaintiff up

with RVRs "so many times that Plaintiff's custody level would end up being level-4," and that Heraldez "made good on" that "retaliatory statement." *Id*. at 6.

The Court will liberally construe the Complaint as seeking to present a retaliation claim. *See Hebbe v. Pliler*, 627 F.3d 338, 342, n.7 (9th Cir. 2010) (holding that the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt"); *Bruce v. Ylst*, 351 F.3d 1283, 1289–90 (9th Cir. 2003) (prison officials may not retaliate against prisoners for filing grievances).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote omitted). And Plaintiff must allege a retaliatory motive. That is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff merely speculates that Defendants' actions may have been taken in retaliation for his complaints and grievances based on their timing. Although the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *Iqbal,* 556 U.S. at 678 (the "mere possibility of misconduct" falls short of meeting the plausibility standard). Rather, Plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). The Complaint does not plausibly allege facts showing any Defendant took any action because of Plaintiff's protected activity. The

allegation that Heraldez "made good on" his retaliatory threat to write Plaintiff up with RVRs is too conclusory to state a claim. *Iqbal*, 556 U.S. at 678.

To the extent Plaintiff intended to present a retaliation claim, it is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

**III. Motion to Appoint Counsel**

Plaintiff seeks appointment of counsel to assist him in this case because he has made repeated efforts to find an attorney, which he states will be necessary at trial, but cannot afford one, and his imprisonment hampers his ability to litigate complex issues. Mot. at 1–2. Plaintiff's claims are not legally complex, and he has shown an ability to articulate them. Because there has not been a cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity, exceptional circumstances warranting appointment of counsel do not exist in this case. *Palmer*, 560 F.3d at 970. Plaintiff's motion for appointment of counsel is therefore **DENIED**.

**IV. Leave to Amend**

Because Plaintiff is proceeding pro se, the Court will grant an opportunity to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

**CONCLUSION**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $22.31 initial filing fee as well as the remaining $327.69 balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and

forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). *The initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed.*

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DENIES** Plaintiff's Motion to appoint counsel (ECF No. 3).

5. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: August 25, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge