UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIEN WASHINGTON,<br>CDCR #P-31014,<br>Plaintiff,<br>vs.<br>RAFAEL ACEVEDO, Warden, et al.<br>Defendants. | Case No.: 26-CV-3733 JLS (BJW)<br><br>**ORDER SCREENING FIRST AMENDED COMPLAINT**<br><br>(ECF No. 8) |

On June 22, 2026, Plaintiff Jamien Washington, a state prisoner proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, accompanied by a Motion to proceed in forma pauperis ("IFP") and a Motion to appoint counsel. ECF Nos. 1–3. On August 26, 2026, the Court granted Plaintiff leave to proceed IFP, denied the motion to appoint counsel and dismissed the Complaint for failure to state a claim. ECF No. 6. Plaintiff has now filed a First Amended Complaint ("FAC"). ECF No. 8.

**SCREENING UNDER 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

**I. Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails

to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II. Allegations in the FAC

Plaintiff alleges that on June 10, 2025, he appeared at his annual classification hearing at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, where chair of the committee Defendant C-facility Captain Alexander allegedly conspired with the other committee members to terminate his single cell status. FAC at 1–2. Plaintiff filed multiple complaints and inmate grievances complaining about that decision, and he claims that as a result he "has been suffering retaliation and reprisals from C-facility correctional officers, and still is in an overall conspiracy to silence, chill, and intimidate Plaintiff from engaging in protected conduct." *Id.* at 2. He claims violations of the First, Eighth and Fourteenth Amendments. *Id.*

***A. First Incident***

On September 13, 2025, at the gate to C-facility, Defendant Correctional Officer Heraldez "lunged at Plaintiff and forcefully grabbed Plaintiff by his left arm in an overly aggressive manner causing an unbearable burning sensation to Plaintiff's left arm in which Plaintiff just dropped to the ground in a sitting position, assaulting Plaintiff." *Id.* at 2–3. Plaintiff claims Heraldez had no reason to assault him because Defendant Correctional Officer Garcia was escorting him in handcuffs and waist chains at that time, and that Garcia should have intervened to prevent the assault. *Id.* at 3. He alleges that Garcia and Heraldez "both denied Plaintiff medical care following the assault." *Id.* Plaintiff alleges Heraldez said he was going to write him up with Rule Violation Reports ("RVR") "so many times that your prison placement score points would end up level-4," and that Heraldez "made good on" that statement in "retaliation against Plaintiff due to Plaintiff's prior complaint against Defendant Heraldez a month prior to the assault." *Id.* at 6.

***B. Second Incident***

Plaintiff alleges that on September 16, 2025, after cooperating with a request to submit to restraints, he asked to be allowed to retrieve his shoes, mobility vest, and cane from his cell "due to the fact that Plaintiff is an 'ADA' inmate." *Id.* at 7. "Then all of a sudden Defendant [Correctional Officer] Gonzalez started approaching Plaintiff in a hostile manner while at the same time yelling 'stop resisting' multiple time[s] exaggerating and manipulating the situation to use unreasonable and unnecessary force." *Id.* Plaintiff states that he was just standing there posing no threat and not resisting in any way when Gonzalez "grabbed Plaintiff's left wrist and put Plaintiff's whole left arm behind his back, and then yanked Plaintiff's left arm in an upward and malicious and sadistic manner causing injury to Plaintiff's left shoulder." *Id.* Four or five other officers were watching and did not intervene. *Id.* "There was no struggle, take down, or any other thing that would constitute resisting by Plaintiff. Defendant Gonzalez had no reason to use force on Plaintiff." *Id.* Plaintiff was taken to the gym where his "injury was documented by medical staff." *Id.* at 8. He requested to be treated for the injury to his left shoulder but Defendant Correctional

Sergeant Mercado "quickly rushed Plaintiff out of the gym to a waiting van" and took him to the Restricted Housing Unit ("RHU"), because it was close to the 4:30 p.m. count and Mercado did not want to be late with the count. *Id.*

***C. Third Incident***

On November 26, 2025, Plaintiff was released from the RHU and escorted in handcuffs and waist chains back to C-facility by Defendant Correctional Officer Molla. *Id.* at 12. He asked Molla to take the handcuffs off because he "had safety concerns" arising from being placed in a cell while handcuffed and unable to defend himself if necessary. *Id.* at 12–13. "So Plaintiff just stopped walking about 8-to-10 feet before we got to cell-117, then all of a sudden in a fit of rage, and in a malicious and sadistic manner, Defendant Molla yanked Plaintiff's right arm in a forceful manner to try to put Plaintiff in cell-117 against Plaintiff's will." *Id.* at 13. Molla then "started yanking, tugging and pulling even harder on Plaintiff's right arm, and Plaintiff pulled back some, and Defendant Molla kept tugging and pulling, suddenly Plaintiff felt a 'muscle strain' in his lower back causing Plaintiff a lot of pain instantly and to which Plaintiff just fell to the ground injuring his lower back." *Id.* Plaintiff was placed in a holding cage in the dayroom and "Defendant Molla denied medical care for Plaintiff's injury to his lower back." *Id.* at 13–14.

***D. Fourth Incident***

On February 17, 2026, Plaintiff had just taken his evening tray of food in the dining hall when an altercation between two inmates forced everyone to the floor. *Id.* at 16–17. During the commotion Plaintiff placed his food in a bowl. *Id.* at 17. As Plaintiff was leaving the chow hall with the bowl of food, Defendant Gonzalez said: "'Washington your bowl' or something to this effect" and pointed at the bowl. *Id.* Plaintiff continued to walk out of the chow hall with his bowl and Defendant Correctional Officer Rendo jumped in front of the door and blocked him from leaving. *Id.* at 17–18. Plaintiff asked Gonzalez "what is all this [] about?" *Id.* at 18. "Next thing you know in a vicious and unprovoked, and malicious, and sadistic attack, Defendant Gonzalez," along with Mercado, Rendo and Defendants Correctional Officers Martinez, Pizarro, Vallejos and Cuevas, "assaulted

Plaintiff, and or contributed to the assault in some way by grabbing Plaintiff's left arm and all at once they slammed Plaintiff to the ground and jumped on Plaintiff's back," causing further injury to Plaintiff's injured lower back. *Id*. at 18–19. While he was on the ground and not resisting, Gonzalez and Rendo "bent Plaintiff's arms in the wrong direction causing injury to Plaintiff's left shoulder." *Id*. at 19. Gonzalez searched Plaintiff while he was on his stomach being handcuffed and "grabbed Plaintiff's 'penis' and 'testicles' multiple times in a hostile manner causing Plaintiff a lot of pain and discomfort." *Id*. at 19–20. Plaintiff yelled at Gonzalez to stop sexually assaulting him, but Gonzalez continued grabbing and pulling on his penis and testicles for three to five minutes. *Id*. at 20. Plaintiff had painful urination and an aching in his testicles for a few weeks afterwards. *Id*. He states that he "was just standing there" when the assault began and there was no reason for the officers to use any amount on force. *Id*. at 20–21.

Finally, Plaintiff seeks to hold Warden Acevedo and Captain Alexander liable for failing to supervise and train the other Defendants, claiming they were aware Plaintiff had safety concerns and had filed numerous grievances against the other officers requesting transfer to another prison as a result of their assaults, harassment and retaliation but turned a blind eye amounting to a failure to protect him. *Id*. at 24–28.

## III. Discussion

### *A. Eighth Amendment Claims*

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to" his constitutional rights. *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832–33). A prison official must know "that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle*, 429 U.S. at 104). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

*1. First Incident*

Plaintiff was instructed in the Court's prior dismissal Order, ECF No. 6 at 8, that his allegation that Heraldez grabbed his arm and caused a burning sensation is insufficient to plausibly allege Heraldez used more than de minimis force, that he used force maliciously or sadistically rather than in a good faith effort to restrain him, or that it was the sort of force "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106. In the FAC, Plaintiff simply repeats those same allegations without curing that pleading deficiency. *See* FAC at 2–3. Plaintiff was also instructed in the prior dismissal Order, ECF No. 6 at 8–9, that he failed to identify any injury suffered as a result of this alleged assault, and that although a serious injury is not required to establish an Eighth Amendment violation, the extent of an injury is a factor that

may determine "whether the use of force could plausibly have been thought necessary" in the situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321; *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Not every malevolent touch by a prison guard gives rise to a federal cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting *Hudson*, 503 U.S. at 9); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove . . . violates the [federal Constitution]."). Plaintiff's allegations in the FAC that Heraldez grabbed his arm and caused a burning sensation does not cure this pleading deficiency, as he once again fails to indicate what level of force was used or what injury, if any, he suffered. FAC at 3–4. Plaintiff was also instructed, ECF No. 6 at 9, that his conclusory allegation that Heraldez and Garcia "denied Plaintiff medical care" fails to state an Eighth Amendment denial of medical care claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim.). Plaintiff has failed to cure that pleading deficiency in the FAC.

Plaintiff was further instructed, ECF No. 6 at 9, that his allegation that Garcia stood by without intervening does not state a failure to protect claim because it does not plausibly allege Garcia was aware of facts from which he could draw an inference that Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Plaintiff has not cured that pleading defect in the FAC. Accordingly, the FAC fails to state a plausible Eighth Amendment claim regarding the first incident.

*2. Second Incident*

Plaintiff alleges that after cooperating with a request to submit to restraints, he asked to be allowed to retrieve his shoes, mobility vest, and cane from his cell, when "all of a sudden Defendant Gonzalez started approaching Plaintiff in a hostile manner while at the same time yelling 'stop resisting' multiple time exaggerating and manipulating the

situation to use unreasonable and unnecessary force." FAC at 7. Plaintiff states that he was just standing there, without resisting or posing a threat, when Gonzalez "grabbed Plaintiff's left wrist and put Plaintiff's whole left arm behind his back, and then yanked Plaintiff's left arm in an upward and malicious and sadistic manner causing injury to Plaintiff's left shoulder." *Id.* "There was no struggle, take down, or any other thing that would constitute resisting by Plaintiff. Defendant Gonzalez had no reason to use force on Plaintiff." *Id.* Plaintiff's "injury was documented by medical staff," and he requested but was denied treatment for the unspecified injury to his left shoulder because Mercado rushed him to the RHU to avoid being late with the count. *Id.* at 8.

Plaintiff was previously instructed, ECF No. 6 at 9–10, that these same allegations fail to describe the injury to his shoulder or its severity so as to plausibly allege the force used was more than de minimis. *See Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting *Hudson*, 503 U.S. at 9). Plaintiff was also previously instructed, ECF No. 6 at 10, that the allegation he was denied medical treatment for his shoulder was vague and conclusory as to the injury suffered, its severity, and what treatment he required but was denied, and therefore failed to state an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678 (conclusory statements do not suffice to plausibly allege a § 1983 claim.) Plaintiff has not cured these defects in the FAC but instead argues that the injury he suffered was having his arm bent behind his back. FAC at 9–10. Because Plaintiff has not cured these deficiencies, the FAC once again fails to state a plausible Eighth Amendment claim regarding the second incident.

*3. Third Incident*

Plaintiff alleges that when he was released from the RHU and escorted in handcuffs and waist chains back to C-facility by Molla he asked Molla to take the handcuffs off because he "had safety concerns" arising from being placed in a cell while handcuffed and unable to defend himself if necessary. FAC at 12–13. "So Plaintiff just stopped walking about 8-to-10 feet before we got to cell-117, then all of a sudden in a fit of rage, and in a

malicious and sadistic manner, Defendant Molla yanked Plaintiff's right arm in a forceful manner to try to put Plaintiff in cell-117 against Plaintiff's will." *Id.* at 13. Molla then "started yanking, tugging and pulling even harder on Plaintiff's right arm, and Plaintiff pulled back some, and Defendant Molla kept tugging and pulling, suddenly Plaintiff felt a 'muscle strain' in his lower back causing Plaintiff a lot of pain instantly and to which Plaintiff just fell to the ground injuring his lower back." *Id.* Plaintiff was placed in a holding cage and "Defendant Molla denied medical care for Plaintiff's injury to his lower back." *Id.* at 13–14.

Plaintiff was previously informed, ECF No. 6 at 10, that these allegations fail to state an Eighth Amendment claim because they do not describe the injury to his back or its severity so as to plausibly allege the force used was more than de minimis, and given the allegation that Plaintiff resisted being placed in the cell, do not plausibly allege Molla applied force maliciously or sadistically rather than in a good faith effort to restore order. *Whitley*, 475 U.S. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106; *Wilkins*, 559 U.S. at 38. The FAC has not cured those pleading deficiencies. Nor does the FAC cure the pleading deficiency noted in the prior dismissal order that the allegation of denial of medical care is vague and conclusory as to the injury suffered, its severity, and what treatment he required but was denied. ECF No. 6 at 10; *see Iqbal*, 556 U.S. at 678 (conclusory statements do not suffice to plausibly allege a § 1983 claim). Because Plaintiff has not cured these deficiencies of pleading, the FAC fails to state a plausible Eighth Amendment claim regarding the third incident.

*4. Fourth Incident*

Plaintiff alleges that when he tried to take a bowl of food out of the dining hall Gonzalez said: "'Washington your bowl' or something to this effect" and he pointed at the bowl, and when he continued to walk out of the chow hall with his bowl Rendo jumped in front of the door and blocked him from leaving. FAC at 17–18. Plaintiff asked Gonzalez "what is all this [] about?", and the "[n]ext thing you know in a vicious and unprovoked, and malicious, and sadistic attack, Defendant Gonzalez," along with Mercado Rendo,

Martinez, Pizarro, Vallejos and Cuevas, "assaulted Plaintiff, and or contributed to the assault in some way by grabbing Plaintiff's left arm and all at once they slammed Plaintiff to the ground and jumped on Plaintiff's back," causing further injury to Plaintiff's injured lower back. *Id*. at 18–19. While he was on the ground and not resisting, Gomez and Rendo "bent Plaintiff's arms in the wrong direction causing injury to Plaintiff's left shoulder." *Id*. at 19. Gonzalez searched Plaintiff while he was on his stomach being handcuffed and "grabbed Plaintiff's 'penis' and 'testicles' multiple times in a hostile manner causing Plaintiff a lot of pain and discomfort." *Id*. at 19–20. Plaintiff yelled at Gonzalez to stop sexually assaulting him, but Gonzalez continued grabbing and pulling on his penis and testicles for three to five minutes, causing Plaintiff to have painful urination and an aching in his testicles for a few weeks afterwards. *Id*. at 20. He states that he "was just standing there" when the assault began and there was no reason for the officers to use any amount on force. *Id*. at 20–21.

Plaintiff was previously informed, ECF No. 6 at 11, that he had failed to identify the type or severity of the injury to his back or shoulder and had not plausibly alleged that the force used to take him to the ground was used maliciously or sadistically rather than in a good faith effort to restrain him, or was the sort of force "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106; *Wilkins*, 559 U.S. at 38; *Whitley*, 475 U.S. at 321. Plaintiff has not cured that defect of pleading in the FAC with respect to being taken to the ground. However, the allegation that while he was on the ground Gonzalez grabbed and pulled on his genitals for three to five minutes causing him to have painful urination and aching testicles for over a week plausibly alleges the force used by Gonzalez was applied maliciously and sadistically and was the sort of force "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327. Plaintiff has not cured the pleading deficiencies with respect to any other Defendant allegedly involved in that incident or for failing to intervene, as there are once again no factual allegations that any other Defendant was aware that Gonzalez was grabbing and pulling on Plaintiff's genitals, was aware Gonzalez was applying excessive force when

doing so, or was aware of any other facts from which they could draw an inference that Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it" during the altercation. *Farmer*, 511 U.S. at 847.

Accordingly, the allegations that Defendant Gonzalez used excessive force when he grabbed and pulled on Plaintiff's genitals are sufficient to survive the "low threshold" of the screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with respect to an Eighth Amendment claim, and Plaintiff is entitled to have the U.S. Marshal effect service of the summons and FAC against Defendant Gonzalez. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915."). Because Plaintiff has not cured the deficiencies of pleading with respect to any other Defendant, the FAC fails to state a plausible Eighth Amendment claim regarding the fourth incident except as to Defendant Gonzalez.

*5. Supervisor Liability*

Plaintiff once again seeks to hold Warden Acevedo and Captain Alexander liable for failing to supervise and train the other Defendants, claiming they were aware Plaintiff had safety concerns and had filed numerous grievances against the other officers requesting transfer to another prison as a result of their assaults, harassment and retaliation, but turned a blind eye amounting to a failure to protect him. FAC at 24–28. Plaintiff's reliance on these Defendants' knowledge of his complaints against the other Defendants is insufficient to state a claim based on their supervisory role because that allegation is vague and conclusory as to the complaints filed.

"[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676–77 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution."). "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or

her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018), quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quote marks omitted). Plaintiff has not plausibly alleged Acevedo or Alexander participated in or directed the Defendants' alleged actions, nor has he presented nonconclusory allegations that they knew of and failed to prevent an Eighth Amendment violation. *Id*. Accordingly, Plaintiff's supervisor liability clam is once again subject to *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

***B. First and Fourteenth Amendment Claims***

Plaintiff alleges in an entirely conclusory manner that he filed multiple complaints and inmate grievances complaining about the decision to terminate his single cell status, and that as a result he "has been suffering retaliation and reprisals from C-facility correctional officers, and still is in an overall conspiracy to silence, chill, and intimidate Plaintiff from engaging in protected conduct" in violation of the First and Fourteenth Amendments. FAC at 2. He alleges Heraldez said he was going to write him up with RVRs "so many times that your prison placement score points would end up level-4," and Heraldez "made good on" that threat in "retaliation against Plaintiff due to Plaintiff's prior complaint against Defendant Heraldez a month prior to the assault." *Id*. at 6.

Plaintiff was previously instructed, ECF No. 6 at 13, that such vague, conclusory, and speculative allegations of retaliation are insufficient to state a claim. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *Iqbal*, 556 U.S. at 678 (holding that the "mere possibility of misconduct" falls short of meeting the plausibility standard); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (holding

that the protected conduct must be shown to have been a "substantial" or "motivating" factor in the defendant's decision to act). Because Plaintiff has not cured this deficiency of pleading with respect to a First or Fourteenth Amendment claim in the FAC, this claim is once again subject to *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

## IV. Leave to Amend

In light of Plaintiff's pro se status, the Court grants one final opportunity to amend with respect to the dismissed claims. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

## V. Plaintiff's Options

Because the Court has determined that Plaintiff's Eighth Amendment claim against Defendant Gonzalez survives the *sua sponte* screening process but the remaining claims against the remaining Defendants do not, Plaintiff is given the opportunity to (1) notify the Court of his intent to proceed only with the Eighth Amendment claim against Gonzalez; or (2) file a Second Amended Complaint that attempts to correct any or all of the deficiencies of pleading identified in this Order. If Plaintiff notifies the Court he wishes to proceed only with the Eighth Amendment claim against Defendant Gonzalez, the Court will issue an Order directing the Clerk to issue the summons as to Defendant Gonzalez and direct the U.S. Marshal to effect service of the summons and FAC on that Defendant, and all remaining claims against all remaining Defendants will remain dismissed from this action.

## CONCLUSION

Based on the foregoing, the Court:

1) **DISMISSES** all claims against all Defendants in the FAC *sua sponte* for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) with the exception of the Eighth Amendment claim against Defendant Gonzalez;

2) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in

which to either: (1) file a Notice of Intent to Proceed with the Eighth Amendment claim against Defendant Gonzalez only; or (2) file a Second Amended Complaint correcting any or all of the deficiencies of pleading identified by the Court in this Order. If Plaintiff chooses to proceed only against Defendant Gonzalez, the Court will issue an Order directing the U.S. Marshal to effect service of the summons and FAC on Defendant Gonzalez and all remaining claims against all remaining Defendants will remain dismissed.

If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, his Second Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (Claims which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED**.

Dated: November 19, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge